AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1955 Kipling Drive, Dayton, Ohio | )<br>)<br>) Case No. 3:19 mj 448<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

1955 Kipling Drive, Dayton, Ohio, which is further described and depicted in Attachment A.

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute and distribution of controlled substances |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason E. Rhodes, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___08/07/2019___

_____
*Judge's signature*

City and state: Dayton, Ohio

Michael J. Newman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Jason E. Rhodes, a Task Force Officer for the Federal Bureau of Investigation ("FBI") and City of Dayton Police Department officer being duly sworn, deposes as follows:

1. Your Affiant is a Task Force Officer with the United States Federal Bureau of Investigation ("FBI") within the meaning of Title 21, United Stated Code ("U.S.C."), Section 878. That is, an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses as detailed in 21 U.S.C. § 878.

2. Your Affiant has been employed in law enforcement since 2007. I currently serve as an officer with the Dayton Police Department ("DPD"). Since June 2016, I have been assigned to the Community Initiative to Reduce Gun Violence ("CIRGV") Task Force, and in November 2017, I became a Task Force Officer ("TFO") with the FBI Safe Streets Task Force. Since 2013, I have been dedicated to the investigation of narcotics, firearms and gang offenses. I have been involved in firearm-related arrests, executed search warrants that resulted in the seizure of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.

3. This affidavit does not contain all information known to the Affiant, rather just that necessary to establish probable cause to believe that evidence of violations of 21 U.S.C. § 841(a)(1), that being distribution and possession with intent to distribute controlled substances, is present at 1955 Kipling Drive, Dayton, Ohio ("**Target Residence**"). The **Target Residence** is further described and depicted in Attachment A.

1

## FACTUAL BACKGROUND

1. In or about July 2019, Your Affiant became aware that Shawn Williams was selling illegal narcotics from his residence at **Target Residence**. Your Affiant was made aware of this by Dayton Police Narcotics Bureau Detective Daniel Reynolds. Detective Reynolds had received this information from a Confidential Informant (CI). The CI is believed to credible because the CI provided information that was corroborated thru independent investigation by both Detective Reynolds and Your Affiant. The CI stated that Shawn Williams had been selling drugs with another male who is currently locked up. Shawn Williams, who was previously convicted of a felony offense, has a pending federal case for "Possession of a firearm after having been previously convicted of a felony offense," in violation of 18 U.S.C. § 922(g)(1), in the United States District Court, Southern District of Ohio at Dayton. This federal case resulted after Shawn Williams was arrested outside the **Target Residence** with a firearm during an encounter involving Affiant on or about January 7, 2019. At the same time, police also arrested another male (identity known to Affiant) outside the **Target Residence**, and who is also charged in federal court with a violation of 18 U.S.C. § 922(g)(1) and is presently incarcerated.

2. On July 15, 2019, Detective Reynolds performed surveillance at **Target Residence**. He found a maroon Buick parked in the driveway bearing Ohio license plate HJX3185. The license plate was found to be registered to Shawn Williams.

3. On or about July 16, 2019, Detective Reynolds and Dayton Police Detective Sean Copley met with a CI for the purpose of attempted a controlled buy of drugs from Shawn Williams. Prior to the buy, the CI was checked for drugs and money and none were found. The CI directed a call to 937-607-7459 and arrangements were made to purchase drugs. The CI was given a sum of

2

money from the Dayton Police Department buy fund and directed to **Target Residence**. TFO Dustin Phillips and Your Affiant were in position to see the CI go into the side door of **Target Residence**. The CI was inside for about one minute before exiting the same door and leaving the immediate area. Detective Reynolds and Detective Copley met with the CI who handed over an amount of heroin and methamphetamine. The CI was again checked for money and drugs and none were found. The CI was shown a photo of Shawn Williams and identified him as being the same person who sold the drugs. The drugs were submitted to the Miami Valley Regional Crime Laboratory (MVCRL), which confirmed after testing to be approximately 1.05 grams of Methamphetamine and .09 grams of a Heroin/Fentanyl mixture. Heroin, Methamphetamine, and Fentanyl are all controlled substances.

4. On July 25, 2019, Detective Reynolds obtained a court order from Dayton Municipal Judge Carl Henderson to retrieve Dayton Power and Light (DP&L) records for **Target Residence**. The court order was signed and turned over to DP&L. Detective Reynolds received the information on July 26, 2019, which indicated the power was in the name of Shawn Williams at **Target Residence**.

5. On or about July 29, 2019, Detective Reynolds and Dayton Police Detective Ronald Gustwiler met with a CI for the purpose of attempted a controlled buy of drugs from Shawn Williams. Prior to the buy, the CI was checked for drugs and money and none were found. The CI directed a call to 937-607-7459 and arrangements were made to purchase drugs. The CI was given a sum of money from the Dayton Police Department buy fund and directed to **Target Residence**. TFO Dustin Phillips and Your Affiant were in position to see the CI go into the side door of **Target Residence**. The CI was inside for about two to three minutes before exiting the

same door and leaving the immediate area. Detective Reynolds and Detective Gustwiler met with the CI who handed over the drugs. The CI was again checked for money and drugs and none were found. The CI was shown a photo of Shawn Williams and identified him as being the same person who sold the drugs. The drugs were submitted to the Miami Valley Regional Crime Laboratory (MVCRL), and confirmed after testing to be .02 grams of a Heroin/Fentanyl mixture.

6. It is common practice for drug traffickers to hide their assets, their addresses, and their telephone numbers by using other person's names in order to avoid detection by law enforcement officials. It is common practice that drug traffickers commonly possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business, and because drug trafficking is largely a cash business. It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, and other documents relating to the transportation and distribution of drugs, as well as information about associates and customers involved in the drug trafficking activity. This information can also be stored in cellular phones in places such as the contacts list. Drug traffickers often conceal in their residences things such as drugs, currency, financial instruments, jewelry, and other items of value relating to or resulting from drug trafficking activities.

7. Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, which can sometimes be found in their residence or stored in cellular phones. Drug traffickers commonly have in their possession (that is on their person, at their residence, and/or their business) weapons such as firearms. Firearms are used to protect a drug trafficker's assets, cash, or drugs, and can be brandished or displayed to intimidate customers or other drug traffickers.

8. Drug traffickers often use cellular phones and text messaging to facilitate contacting their suppliers, drug trafficking associates, and/or their customers, sometimes in code. It is common for drug transactions to be arranged by cellular phone communication, either orally or by text. Evidence of past communication between drug traffickers and their customers, suppliers, and/or drug trafficking associates may be found in text messages, call logs, and other forms of electronic communication stored in the cellular phone.

9. Based on the above, Affiant asserts there is probable cause to believe that contraband and evidence of violations of 21 U.S.C. § 841(a)(1) – as listed in Attachment B – is present inside the **Target Residence**.

Further your Affiant sayeth naught.

_____
Jason E. Rhodes, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me August 7, 2019.

_____
HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

5

## ATTACHMENT A

The location to be searched is the residence, curtilage, and outbuildings located at 1955 Kipling Drive, Dayton, Ohio (hereinafter "**TARGET RESIDENCE**"). The **TARGET RESIDENCE** is depicted in the photograph below.



## ATTACHMENT B

## ITEMS TO BE SEIZED

1. Controlled substances;

2. Cellular phones, scales, packaging materials, diluting agents, drug manufacturing equipment, and other property used in the distribution or storage of controlled substances;

3. Cash, cashier's checks, jewelry, and other financial instruments representing proceeds of the distribution of controlled substances;

4. Ledgers, notes, records, receipts, correspondence, and other papers related to the acquisition or distribution of controlled substances or firearms;

5. Telephone numbers, phone contact lists, address books, or other contact data;

6. Wire transfer receipts, bank account information, checkbooks, bank statements and other financial records;

7. Indicia of occupancy, ownership, rental agreements, insurance, utilities related to the purchase or occupancy of 1955 Kipling Drive, Dayton, Ohio or other residences;

8. Evidence of travel, such as rental car agreements, receipts, passports, airline tickets/receipts, travel itineraries, hotel bills, and credit card receipts;

9. Surveillance equipment and DVR recording devices;

10. Firearms, ammunition, or records relating to firearm/ammunition possession.